IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOSEPH E. WHITE, | ) | Case No. 4:09cv3145 |
| | ) | |
| Plaintiff, | ) | ***REPLY BRIEF IN SUPPORT OF*** |
| | ) | ***MOTION TO DISMISS*** |
| v. | ) | |
| | ) | |
| RICHARD T. SMITH, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ARGUMENT**

**1.    Statute of Limitations**

Plaintiff argues that he is making no claim for false arrest or false imprisonment, but that of the "tort of malicious prosecution." (Filing 39, p. 3).[1] Plaintiff spends over half of his Complaint's numerous pages alleging facts pertaining to and actions taken by Defendants leading to his "**illegal arrest**, prosecution, conviction and **imprisonment**." (Filing 1, pp. 5-23; 26) (emphasis added). He even includes in the title of his Count I the terms "false arrest." (Filing 1, p. 26). Plaintiff's own words rebut this argument.

Plaintiff claims that success in his claim would impugn his state criminal conviction and therefore the deferred accrual rule of *Heck* applies. (Filing 39, p. 5). This is not necessarily true. Plaintiff claims in Count I that the "Defendants' actions constitute unreasonable seizure...in violation of the Fourth and Fourteenth Amendments..." and Defendants committed violations of the Fifth, Sixth and Eighth Amendments. (Filing 1, pp. 27, 28). In their brief in support of the Motion to Dismiss, Defendants cited to a case

---

[1] This seems to be controverted later in Plaintiff's brief wherein he states that he is alleging a constitutional injury caused by Defendants' malicious prosecution and that their argument that Plaintiff cannot proceed under that theory is false and manufactured (Filing 39, p. 9); however, Defendants will address that later in this brief.

*Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996), but did not discuss it and the case is instructive here.

In *Simmons*, the plaintiff brought a § 1983 action claiming his Fifth Amendment rights had been violated when he was coerced into a confession and later convicted. *Id.* Although the plaintiff in *Simmons* had claimed a Fifth Amendment violation, the Court looked to *Heck* which involved an alleged Fourth Amendment violation. In finding that the plaintiff's case was barred by the Statute of Limitations, the *Simmons* Court cited to an example in *Heck* of a § 1983 suit that should be allowed to proceed as determined by the U.S. Supreme Court: "suits for damages for allegedly unreasonable searches [under the Fourth Amendment], even when such searches yielded evidence admitted at trial, resulting in conviction." *Id.,* at 1095 (citing *Heck* at 2372 n.7). "Because of doctrines such as independent source, inevitable discovery, and, most importantly, harmless error, 'such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful,' and thus the action should proceed [without the benefit of the *Heck* deferred accruals of the statute of limitations]." *Id.*, at 1095 (citing *Heck* at 2372 n.7). The Court in *Simmons* found that "this reasoning should be extended to Fifth Amendment claims challenging the voluntariness of confessions." *Id.*, at 1095. Citing to *Arizona v. Fulminante*, 499 U.S. 279, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991), the Court agreed that

> in terms of effect on trial, there was no qualitative distinction between the admission at trial of illegally seized evidence and the admission of involuntary confessions. In applying harmless error analysis to a confession obtained in violation of the Fifth Amendment, the Supreme Court noted: The admission of an involuntary confession is a "trial error," similar in both degree and kind to the erroneous admission of other types of evidence. The evidentiary impact of an involuntary confession, and its effect upon the composition of the record, is indistinguishable from that . . . of evidence seized in violation of the Fourth Amendment . . . .

*Simmons*, at 1095 (citing *Arizona* at 309-310).

The facts and counts alleged in the Plaintiff's Complaint belie Plaintiff's statute of limitations argument and the Court should grant the Defendants' Motion to Dismiss.

**2.      Respondeat Superior**

Plaintiff, in his brief, states that he is not basing any claim on the theory of respondeat superior, but that he has plead facts showing an official policy or a widespread custom or practice that caused his injury. (Filing 39, p. 5). In his Complaint, Plaintiff alleges that all the Defendants named were acting in the course and scope of their employment with the County of Gage and sued them all in their official capacities. (Filing 1, pp. 4-5). By pleading as such, Plaintiff places the action into the realm of suing the employer, in this case Gage County. See *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985)(civil rights lawsuits brought pursuant to 42 U.S.C. §1983 against a government official acting in her or his official capacity is a suit against the governmental entity which employs the official). Plaintiff can survive a motion to dismiss the County as well as the individual defendants in their official capacities only if he pleads with particularity an "official policy or a widespread custom or practice that caused his injury".

A municipality can be liable under § 1983 **only** where its policies are the moving force behind the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). This Court has previously ruled that "under Nebraska law, 'county sheriffs are not authorized to adopt policies on behalf of their jurisdictional counties with regard to...investigating, apprehending or arresting criminal suspects." *Williams v. County of Scottsbluff*, 2005 U.S. Dist. LEXIS 31948, *11. "County law enforcement officers...are

3

bound by state law to exercise only those powers and duties 'conferred and imposed upon him or her by other statutes and by the common law, including the duty to apprehend...and bring to the court all felons and disturbers and violators of the criminal laws of this state,...and generally to keep the peace in his or her proper city.'" *Id.*, at *13 (citing Neb. Rev. Stat. §§ 23-1701.02 and 23-1701.03). In *Williams*, this Court found that the defendant Sheriff was charged with pursuing prosecution of criminal law violators "pursuant to policies set by the state legislature." *Id.*, at *14. "The 'implementation of these policies by a municipal official does not constitute formulation by a final policy-making body sufficient to impose liability upon the municipality'" *Id.*, at *14 (citing *Poor Bear v. Nesbitt*, 300 F. Supp. 2d 904, 917 (D. Neb. 2004)).

None of the individual defendants were local officials with final policymaking authority with respect to the issues presented in this case. Accordingly, Gage County (and the GCSO and GCAO if this Court finds they are suable entities) as well as the individual defendants in their official capacities are not subject to § 1983 liability in this case.

Furthermore, Plaintiff's allegations cannot be construed to have alleged a continuing, widespread, persistent pattern of unconstitutional misconduct by Gage County and its law enforcement officers. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Williams*, at *15 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985). In this case, and each of the four companion cases, Plaintiffs are alleging unconstitutional actions taken by the defendants in one investigation involving six criminal suspects. There are no other allegations of a

continuing, widespread, or persistent pattern to survive a motion to dismiss the County and the individual defendants in their official capacities.  By simply stating the magic words like a pro se litigant with respect to the policies or pattern of the Defendants is not enough.  See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (U.S. 2009) (plaintiff must plead sufficient factual matter to show that defendants adopted and implemented policies at issue not for a neutral, investigative reason, but for the purpose of violating constitutional rights).  Plaintiff places an unfair burden on Defendants' counsel and this Court to imagine or conjure up a pattern.

    3.    **GCSO and GCAO as Entities Subject to Suit**

In his brief, Plaintiff argues that "[t]here is nothing before the court that would indicate that the County Attorney or County Sheriff's offices are not other units of local government." (Filing 39, p. 6).  Actually, there are a multitude of citations to case law and statutes in the Defendants' brief showing this Court that, in fact, the GCSO and the GCAO are not "persons" for purposes of 42 U.S.C. § 1983 litigation.  Furthermore, this Court agreed in *Fletcher v. Nebraska*, 2006 U.S. Dist. LEXIS 33431, *26-27 (D. Neb. 2006), wherein it found that  "Brown County defendants correctly point out that the "Office of Brown County Attorney" and the "Brown County Sheriff's Department" are merely units within Brown County, Nebraska, and those units lack the legal capacity to sue or be sued in their own names. As the defendants note, subordinate units of a county cannot serve as separate defendants in litigation."  Plaintiff's citation to an employment case (Filing 39, p. 7) is distinguishable to the present matter for exactly the reasons stated by Plaintiff in his brief - it was a case involving a claim of employment discrimination, NOT a case under 42 U.S.C. §1983 for violations of constitutional rights wherein the case law is clear as to what defines a "person" under the statute.  Plaintiff's argument is without merit and Defendants

5

GCSO and GCAO should be dismissed.

### 4. Smith has Absolute Immunity

Plaintiff claims that Smith is not entitled to absolute immunity for his "investigatory activity." (Filing 39, p. 7). There are no factual allegations that can be called investigative activities by Smith which violate any of Plaintiff's constitutional rights. The U.S. Supreme Court, in *Imbler v. Pachtman*, held directly that state prosecuting attorneys acting within the scope of their duties in initiating and pursuing a criminal prosecution and presenting the state's case are absolutely immune from civil suit and damages stemming from the alleged deprivation of the plaintiff's constitutional rights under 42 U.S.C. § 1983. *Id.*, 424 U.S. 409, 96 S. Ct. 985, 47 L. Ed. 2d 128 (1976). The Court equated the status of the prosecutor's immunity in that case to that existing at common law; and found that this immunity remains even in a case where a genuinely wronged defendant is left without civil redress. *Id.* The Court also held that absolute immunity remains even where a prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information or failed to make full disclosure of all facts casting doubt upon the state's testimony. *Id.*

The Supreme Court, in its most recent decision on prosecutorial immunity, *Van de Kamp v. Goldstein*, ___ U.S. ___, 129 S. Ct. 855, 1792 L. Ed. 2d 706 (2009) expanded a prosecutor's absolute immunity to include administrative acts as well. A unanimous Court in an opinion written by Justice Breyer, addressed a case in which criminal defendant Goldstein claimed his conviction was based on unreliable jailhouse informant testimony. He argued that at least some prosecutors in the LA County District Attorney's Office knew about facts that would undercut that testimony. Goldstein sued the LA County District Attorney and the Chief Deputy in part for their failure to adequately train and supervise the

prosecutors who worked under them and their failure to establish an information system about informants.  The Supreme Court, in reversing the lower courts, held for the first time that administrative tasks are among those things for which a prosecutor enjoys absolute immunity.  *Id.,* 129 S. Ct at 864.

The *Van de Kamp* court in referring to *Imbler* indicated that the *Imbler* court observed that

> A 'prosecutor', inevitably makes many decisions that could engender colorable claims of constitutional deprivation.  Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.  The Court thus rejected the idea of applying the less-than-absolute, or qualified, immunity that the law accords to other 'executive or administrative officials' noting that 'the honest prosecutor would face greater difficulty' than would those official 'in meeting the standards of qualified immunity.' Accordingly, the immunity the law grants to prosecutors is absolute.

*Id.*, at 860 (internal citations omitted).

In extending the immunity in *Van de Kamp*, the Court also observed, as to administrative duties, "[w]e conclude that the very reasons that led this Court in *Imbler to* find absolute immunity requires a similar finding in this case.  We recognize as Chief Judge Hand pointed out that sometimes such immunity deprives a plaintiff of compensation that he undoubtedly merits; but the impediments to the fair, efficient functioning of a prosecutorial office that liability would create lead us to find that *Imbler* must apply here." *Id.,* 129 S. Ct. at 864.

The impact of *Imbler* and it progeny, now including *Van de Kamp*, assert that the mere threat of a lawsuit is sufficient to require the immunity to be absolute.  As such, no lawsuit will be allowed to continue or no judgment can be rendered assessing damages

against a prosecutor.

It is only where there is a clear investigative act of some kind by a prosecutor where absolute immunity is unavailable. Plaintiff argues that Smith was investigating the case and cites to *McGhee v. Pottawattamie County, Iowa*, in support of his argument. This year, however, the U.S. Supreme Court granted certiorari on this case as well as a motion for leave to file a brief as amici curiae by the National Association of Assistant United States Attorneys, et al. See *Pottawattamie County v. McGhee*, 129 S. Ct. 2002 (U.S. 2009). As the Supreme Court has granted certiorari, this Court should give its rule of law little weight in this matter.

The Court, in *Amrine v. Brooks*, 2007 U.S. Dist. LEXIS 8439, cited to *Reasonover v. St. Louis County*, 447 F.3d 569 (8th Cir. 2006) to find that a prosecutor enjoys absolute immunity from suit for acts performed in **initiating** a prosecution and in presenting the State's case. *Id.*, at *18 (citing *Reasonover* at 579-580) (emphasis added).

"'Immunity is not defeated by allegations of malice, vindictiveness, or self-interest"...Even if a prosecutor 'knowingly present[s] false, misleading or perjured testimony, or even if he [intentionally] with[holds] or suppresse[s] exculpatory evidence, he is absolutely immune from suit.'" *Id.* (citing *Reasonover*). "Such conduct may result in an overturned conviction but it does not subject the prosecutor to personal liability." *Id.*

The Court, in affirming the dismissal of the prosecutor, held that "[plaintiff] cannot circumvent a doctrine which protects even the wicked by inventing a duty in the merely negligent to avoid conduct that would be immune from suit if done intentionally. Whatever further investigation [the prosecutor] did or should have done in preparation for trial was no less a prosecutorial function that prosecuting the trial itself." *Id.*, at *20.

The Court also noted that a prosecutor's own interviewing of witnesses is prosecutorial rather than police work. "As the Eighth Circuit has explained, '[n]ot all of an

advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation.'" *Id.*, at *19 (citing *Reasonover*, at 579-580) (other citation omitted).

This is most certainly true in cases coming out of small offices where the County Attorney may be the only person preparing a case for trial. Small offices do not have the resources available to hire internal investigators or other staff to assist in preparing a case for trial. See *Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980)(a prosecutor's absolute immunity extends to the investigators who work for him, shielding their actions taken in connection with a criminal prosecution). Smith did not have at his disposal investigators to assist in preparing for trial. The evidence gathered by Smith leading up to trial was obtained in the context of preparing for trial and were not investigative functions. See *Reasonover*, 447 F.3d at 580.

Finally, while courts have found that a sworn statement of a prosecutor does not enjoy absolute immunity, that is not the case in this matter. There are no allegations that Smith made any sworn statements in support of an arrest warrant, merely that he assisted Searcey in drafting his own statement. The allegations of Plaintiff consist of Smith preparing his case for Court in order to properly try it. Smith is entitled to absolute prosecutorial immunity.

### 5. Failure to state a claim against DeWitt

Plaintiff's short paragraph with respect to Defendant DeWitt shows clearly that DeWitt did not have any personal contact with White. (Filing 39, p. 8). DeWitt's actions in this case remain that of a supervisor of the deputies that investigated the gruesome murder of Helen Wilson.

### 6. Malicious Prosecution

Plaintiff claims that Defendants' argument with respect to his malicious prosecution claim is a "false and manufactured argument." (Filing 39, p. 9). However, back on page

three of his brief, he informs the court that he is proceeding under the "tort of malicious prosecution." (Filing 39, p. 3). Plaintiff cannot have it both ways.

In this case, Plaintiff is claiming a substantive due process violation which is appropriate but the malicious prosecution claim remains a state common law claim. See *Albright v. Oliver*, 510 U.S. 266, 271, 274-75, 127 L. Ed. 2d 114, 114 S. Ct. 807 (1994) (there was no substantive due process right arising from a malicious prosecution). While the courts may allow a malicious prosecution claim to proceed under its pendant jurisdiction as long as there are claims that Defendants under the same circumstances deprived Plaintiff of a right, privilege or immunity secured by the constitution, this Court cannot do so in this case. See *Amrine v. Brooks, supra*, at *39-40.

Under Nebraska law, to proceed on a claim against the County and its employees for malicious prosecution, a claim must be first be filed pursuant to the Political Subdivision Tort Claims Act. At this point, the Plaintiff has not alleged compliance with the Act. Accordingly, Plaintiff's claim for malicious prosecution must be dismissed.

### 7. Personal Involvement of All Defendants

Plaintiff must allege that each defendant took some action with the intent to deprive HIM of a constitutionally guaranteed right. Throughout the lengthy fact section of Plaintiff's complaint, he alleges many things that pertain to everyone else connected to this case but him. The pleading rules require a clear, concise statement of facts showing how each and every defendant were involved in the alleged violation of Plaintiff's rights. Plaintiff simply fails to allege facts consistent with these rules as to all Defendants. See *McDowell v. Jones*, 990 F.2d 433, 435 (8th Cir. 1993) (a complaint must allege personal participation by defendant in unconstitutional acts); *Means v. Wilson*, 422 F.2d 833, 840 (8th Cir. 1975) *cert. denied* 424 U.S. 958 (1976) (at a minimum a complaint must state some way in which the named defendants participated in the alleged deprivation of plaintiff's civil rights). Those defendants not directly involved in actions taken with respect to Plaintiff should be

dismissed.

### 8.     Facts pertaining to companion Plaintiffs

Plaintiff, in his Complaint, provides the Court with the "History of the Underlying Criminal Case." (Filing 1). However, much of that history pertains to actions taken with respect to other parties, some of which are plaintiffs in four companion cases. Plaintiff places an unfair burden on Defendants as well as the Court through his "history" to figure out how the facts pertaining to and actions taken with respect to other witnesses and suspects (including the companion plaintiffs) violate Plaintiff's constitutional rights. One cannot allege that his constitutional rights were violated through the alleged violations of another person's rights without making that clear and concise in his Complaint.

### 9.     Pendant Jurisdiction

Plaintiff correctly states that he has not taken pendant jurisdiction of any claim made under the Nebraska Political Subdivision Tort Claims Act. (Filing 39, p. 10). That is exactly the Defendants' point as argued in their brief in support of motion to dismiss. Before this Court can take pendant jurisdiction over the torts alleged by Plaintiff, he must comply with the Act as a condition precedent to filing a lawsuit. Plaintiff's argument is without merit as he cannot amend his Complaint through a brief.

## CONCLUSION

For the reasons stated herein as well as in the Brief in Support of Motion to Dismiss, Defendants respectfully request that the Motion to Dismiss be granted and the above entitled action be dismissed.

Dated this <u>31st</u> day of August 2009

**RICHARD SMITH, et al.**, Defendants.

| | | | |
|---|---|---|---|
| BY: | s/Paul L. Douglas<br>Paul L. Douglas, #11066<br>6510 Holdrege Street, Suite A<br>Lincoln, NE 68505<br>402.466.5620<br>poldouglas@windstream.net<br><br>*Attorney for All Defendants* | BY: | s/Richard L Boucher<br>/sJennifer M. Tomka<br>Richard L. Boucher, #16202<br>Jennifer M. Tomka, #19955<br>BOUCHER LAW FIRM<br>5555 S. 27th St., Ste. A<br>Lincoln, NE 68512<br>402.475.3865<br>rboucher@boucherlawfirm.com<br>jtomka@boucherlawfirm.com<br><br>*Attorneys for All Defendants* |
| BY: | s/Patrick T. O'Brien<br>Patrick T. O'Brien, #13106<br>Butler, Galter, O'Brien, & Boehm<br>811 S. 13th Street<br>Lincoln, NE 68508<br>402.475.0811<br>pto@neb.rr.com<br><br>*One of the Attorneys for Defendant Smith* | | |

## CERTIFICATE OF SERVICE

It is hereby certified that on August 31, 2008, the foregoing Reply Brief in Support of Motion to Dismiss was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record, including:

Robert F. Bartle
Jeffrey D. Patterson
Bartle & Geier Law Firm
1141 H Street
Lincoln, NE 68508

Douglas J. Stratton
Stratton Law, PC
200 W. Benjamin Ave.
Norfolk, NE 68702

s/Jennifer M. Tomka
Jennifer M. Tomka, #19955