IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CARROLL T. WHITE, as Personal Representative of the Estate of Joseph White, deceased, and KATHLEEN A. GONZALEZ,<br><br>          Plaintiffs,<br><br>    v.<br><br>RICHARD T. SMITH, in his official capacity, BURDETTE SEARCEY, Dep., in his official and individual capacities, GERALD LAMKIN, Dep., in his official and individual capacities, JERRY O. DEWITT, Sheriff, in his official and individual capacities, WAYNE R. PRICE, PhD., in his official and individual capacities, and COUNTY OF GAGE, NEBRASKA, a Nebraska political subdivision,<br><br>          Defendants. | 4:09CV3145<br><br>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO RECONSIDER |

On August 8, 2011, I entered an order denying a motion for summary judgment filed by Defendants Burdette Searcey, Gerald Lamkin, Jerry O. DeWitt, and Wayne R. Price. (ECF No. 142. See also Mot. for Summ. J., ECF No. 61.) Now before me is a motion to reconsider that order. (ECF No. 146.) After due consideration, I find that I shall not modify my order denying the defendants' motion for summary judgment.

### I. BACKGROUND

In 1989, Joseph E. White was convicted of murdering Helen Wilson, but DNA tests led to his release from prison in 2008. (See Compl. ¶¶ 36-37, ECF No. 1.) On July 15, 2009, White filed a complaint against Defendants Richard T. Smith, Burdette Searcey, Gerald Lamkin, Jerry O.

1

DeWitt, Wayne R. Price, the County of Gage, Nebraska, and others,[1] alleging that the defendants purposefully manufactured and conspired to manufacture a criminal case against him using false evidence. (See id. ¶¶ 43-50.) White is now deceased, but his claims have been revived in the name of the personal representative of his estate. (See ECF Nos. 140-141.)

Searcey, Lamkin, DeWitt, and Price moved for summary judgment on the ground that they are entitled to qualified immunity from suit. (See Mot. for Summ. J. at 2, ECF No. 61.) I reviewed the records that were suitable for consideration in connection with the defendants' motion, and I found that "when the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in his favor, the record establishes that the defendants engaged in conscience-shocking conduct that violated White's due process rights." (Mem. & Order at 68, ECF No. 142.) Based on this finding, I concluded that the defendants are not entitled to qualified immunity, and I denied their motion for summary judgment.

My memorandum and order on the defendants' motion for summary judgment includes a detailed review of the facts that I considered when analyzing the defendants' motion. Because that discussion is quite lengthy, I shall not restate all of the relevant facts here. Nevertheless, a short summary of key findings that appear in the memorandum may be helpful.

First, I noted that there is evidence in the record showing that Searcey launched his investigation of White based on the questionable claims of dubious witnesses–including some claims that had been specifically rejected by the Beatrice Police Department (BPD); concealed from the BPD information that he obtained during a private investigation; directed his witness not to disclose her information to anyone else; made delayed written reports with inaccuracies or material omissions; drafted misleading affidavits; supplied information to witnesses and pressured them with threats, deception, and false evidence to corroborate the defendants' case against White; manufactured evidence to account for the presence of type B blood at the crime scene; disregarded

---

[1] The Gage County Sheriff's Office, the Gage County Attorney's Office, Kent Harlan, and Mark Meints were also named as defendants in this action, (see Compl., ECF No.1), but White's claims against them have been dismissed, (see Mem. & Order on Defs.' Mot. to Dismiss, ECF No. 43; Mem & Order on Pl.'s Mot. to Dismiss, ECF No. 135). Richard T. Smith has also been dismissed from this action insofar as he has been sued in his individual capacity. (See Mem. & Order on Defs.' Mot. to Dismiss, ECF No. 43.)

evidence that undermined his case against White; and ignored White's requests for counsel during questioning. I also noted that there is evidence showing that DeWitt "oversaw–and directly participated in–the manufacturing of a case against White through the use of false evidence, threats, deception, and the willful neglect of inconsistent evidence." (Mem. & Order at 77, ECF No. 142.) By way of example, I cited evidence indicating that DeWitt threatened one of the witnesses against White with electrocution, denied the witness access to counsel during questioning, and supplied the witness with information about the crime while allowing him to claim that he recalled this information in his dreams. Also, DeWitt declined to document the witness's statements when they were inconsistent with the defendants' case against White, and he directed a BPD officer who was skeptical of the defendants' case to stay out of the investigation.

I noted that there are documents indicating that Price used false evidence and his psychological training to attempt to convince witnesses that they had repressed memories of the crime. For example, there is evidence that Price held "therapy sessions" with a witness and succeeded in convincing him that he was recovering memories of the crime in his dreams, when in fact the defendants were supplying the witness with the information.

Finally, I cited evidence indicating that Lamkin assisted Searcey in the manufacturing of false evidence to account for the presence of type B blood at the crime scene; disregarded a witness's requests for counsel during questioning; threatened the witness with the death penalty unless he cooperated with the defendants; and fed to the witness information that the defendants would later claim had been recovered from the witness's memory.

The defendants now ask me to reconsider the findings and conclusions set forth in the memorandum and order denying their motion for summary judgment. (Defs.' Mot. to Reconsider, ECF NO. 146.)

## II.   STANDARD OF REVIEW

The defendants have not identified any rule that allows me to reconsider my memorandum and order. "The Federal Rules of Civil Procedure do not mention motions for reconsideration," and when a party fails to specify the rule under which its motion is made, courts are "put in the difficult position of deciding" how best to characterize the motion. Broadway v. Norris, 193 F.3d 987, 989

(8th Cir. 1999). See also Ackerland v. United States, 633 F.3d 698, 701 (8th Cir. 2011) (noting that the court of appeals discourages "the use of a self-styled motion to reconsider 'that is not described by an particular rule of federal civil procedure'" (quoting Sanders v. Clemco Industries, 862 F.2d 161, 168 (8th Cir. 1988))).[2] It is particularly important to identify the rule underlying the defendants' motion in this case because the defendants filed a notice of appeal six days after filing their motion to reconsider. (See ECF No. 149.) As I shall explain, the rule that I use to analyze the motion to reconsider may determine whether the defendants' notice of appeal deprived this court of jurisdiction to hear the motion.

The filing of a notice of appeal usually divests the district court of jurisdiction. See, e.g., Johnson v. Hay, 931 F.2d 456, 459 n.2 (8th Cir. 1991) ("Once a notice of appeal has been filed in a case in which there has been denial of a summary judgment raising the issue of qualified immunity, the district court should then stay its hand. Jurisdiction has been vested in the court of appeals and the district court should not act further."). An exception to this general rule appears in Federal Rule of Appellate Procedure 4(a). Rule 4(a)(1)(A) states that ordinarily, a notice of appeal must be filed within 30 days after the entry of the judgment or order that is being appealed. The filing of certain motions can alter this deadline, however. Rule 4(a)(4)(A) states that if a party timely files in the district court any of the following motions, the time to file an appeal runs from the entry of the order disposing of the last such remaining motion: 1) a motion for judgment under Rule 50(b); 2) a motion to amend or make additional factual findings under Rule 52(b); 3) a motion for attorney fees under Rule 54; 4) a motion to alter or amend the judgment under Rule 59; 5) a motion for a new trial under Rule 59; or 6) a motion for relief under Rule 60 if the motion is filed within 28 days after the judgment is entered. Importantly, "If a party files a notice of appeal after the court announces or enters a judgment–but before it disposes of any motion listed in Rule 4(a)(4)(A)–the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B)(i).

In short, if the defendants' motion to reconsider is deemed to be one of the motions listed in Rule 4(a)(4)(A), then I have jurisdiction to hear the motion, and the notice of appeal becomes

---

[2] Prior to October 22, 2010, this court's local rules included a rule governing motions for reconsideration. See NECivR 60.1 (2009). This rule is no longer in effect.

effective after the motion is resolved.  See, e.g., MIF Realty L.P. v. Rochester Associates, 92 F.3d 752, 755 (8th Cir. 1996) ("[W]hen a notice of appeal is filed after a judgment but before a district court has had an opportunity to rule on 'a pending tolling motion, the notice of appeal lies dormant until the trial court disposes of the pending motion.  Upon such disposition, the notice becomes effective.'" (quoting United States v. Duke, 50 F.3d 571, 575 (8th Cir. 1995)).)  Conversely, if the defendants' motion is not a "tolling motion" listed in the rule, it is likely that I cannot consider it.  E.g., Johnson, 931 F.2d at 459 n.2.

It seems to me that the defendants' motion to reconsider might be based on any one of three different Federal Rules of Civil Procedure.  First, it might be based on Federal Rule of Civil Procedure 54(b), which states that in some circumstances,[3] an "order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Because I have not directed the entry of a final judgment, one might argue that the order denying the defendants' summary judgment motion may be revised at any time under Rule 54(b), and therefore the defendants' motion should be characterized as a Rule 54(b) motion.  Cf. Jackson v. Roach, 364 F. App'x 138, 139 (5th Cir. 2010) ("[T]he denial of a motion for summary judgment is an interlocutory order, which the trial court may reconsider and reverse for any reason it deems sufficient . . . .").  Motions based on Rule 54(b) are not "tolling motions" listed in Rule 4(a)(4)(A); thus, if the defendants' motion is deemed to be a Rule 54(b) motion, I have no jurisdiction to consider it.

The Eighth Circuit has held, however, that an order rejecting the defense of qualified immunity at the summary judgment stage "is a 'final' judgment subject to immediate appeal" that "falls within" 28 U.S.C. § 1291.  Behrens v. Pelletier, 516 U.S. 299, 307 (1996).  See also Taylor v. Carter, 960 F.2d 763, 764 (8th Cir. 1992) ("A district court's denial of a motion to dismiss a claim on the basis of qualified good-faith immunity is a final appealable decision within the meaning of

---

[3] The quoted language does not apply if the court has directed "entry of a final judgment as to one or more, but fewer than all, claims or parties" after "expressly determin[ing] that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

28 U.S.C. § 1291.")  Behrens and Taylor suggest that the order denying the defendants' summary judgment motion is itself a "final judgment"; if so, it seems to me that the motion to reconsider cannot properly be characterized as a Rule 54(b) motion.

The defendants' motion to reconsider might also be based on either Rule 59(e) or Rule 60(b). Indeed, "self-styled motion[s] to reconsider" are "typically construe[d]" as arising under one of these two rules.  See Ackerland v. United States, 633 F.3d 698, 701 (8th Cir. 2011).

There are important differences between Rules 59(e) and Rule 60(b), however, and it can be difficult to determine which of the rules should govern a "motion to reconsider."  Courts confronting this problem sometimes determine whether the motion would be untimely if it were considered under one of the rules before proceeding to consider it under the other.  See, e.g., Sanders v. Clemco Industries, 862 F.2d 161, 168-69 & n.11 (8th Cir. 1988).  In this case, however, the defendants' motion to reconsider was filed within 28 days of the entry of the memorandum and order denying their motion for summary judgment.  (See ECF Nos. 142, 146.)  Thus, it was filed timely under both rules.  See Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."); Fed. R. App. P. 4(a)(4)(A)(vi) (stating that a Rule 60 motion filed no later than 28 days after the entry of the judgment tolls the time for filing an appeal).  Under these circumstances, I cannot use the timing of the defendants' motion to help me categorize it.

Courts may also consider the substance of the motion in order to determine whether it arises under Rule 59(e) or Rule 60(b).  E.g., Sanders, 862 F.2d at 168 n.11.  In this case, the defendants' motion is based on three primary arguments: 1) the affidavits and depositions submitted by the plaintiff should have been disregarded; 2) there is no evidence that the defendants committed conscience-shocking actions; and 3) there is no evidence of a conspiracy to manufacture a false case against the plaintiff.  (See Mot. to Reconsider at 1, ECF No. 146; Defs.' Br. at 1-10, ECF No. 147.)  After considering the substance of these arguments, I find that the defendants' motion is best characterized as a Rule 59(e) motion.

Rule 59(e) was originally "adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." White v. New Hampsire Dept. of Employment Security, 455 U.S. 445, 450 (1982) (quoting Federal

6

Rule of Civil Procedure 59 advisory committee's note (1946 Amendment)).  The rule allows the court to "reconsider issues previously before it" and "examine the correctness of the judgment itself." Leonard v. Dorsey & Whitney LLP, 553 F.3d 609, 620 (8th Cir. 2009) (quoting Ray E. Friedman & Co. v. Jenkins, 824 F.2d 657, 660 (8th Cir. 1987)).  See also United States v. Metropolitan St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (noting that Rule 59(e) motions can be used to correct manifest errors of law or fact or to present newly discovered evidence).  The Eighth Circuit has consistently held, however, that "Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment."  Metropolitan St. Louis Sewer Dist., 440 F.3d at 933.  In this case, the defendants' motion is not based on new evidence, new legal theories, or new arguments that could have been raised prior to my denial of their motion for summary judgment.  Rather, the defendants claim that I made legal and fact-finding errors when analyzing their motion for summary judgment.  Thus, the motion appears to fall squarely within the scope of Rule 59(e).  See Norman v. Arkansas Dept. of Education, 79 F.3d 748, 750 (8th Cir. 1996) (noting that "any motion that draws into question the correctness of the judgment is functionally a motion under [Rule 59(e)], whatever its label" (citations omitted)); see also Innovative Home Health Care v. P.T.-O.T. Associates of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998).

     On the other hand, the defendants' motion does not appear to fall within the scope of Rule 60(b).  Rule 60(b) allows a court to "relieve a party . . . from a final judgment, order, or proceeding" for a number of specific reasons, including:

    (1) mistake, inadvertence, surprise, or excusable neglect;

    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3) fraud[,] . . . misrepresentation, or misconduct by an opposing party;

    (4) the judgment is void;

    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

The defendants' motion is not based on any of the reasons listed in Rule 60(b)(1)-(5). Rule 60(b)(1) may operate to relieve a defaulting party from an adverse judgment "because of that party's 'mistake, inadvertence, surprise, or excusable neglect.'" Feeney v. AT & E, Inc., 472 F.3d 560, 562 (8th Cir. 2006) (quoting Fed. R. Civ. P. 60(b)(1)) (emphasis added). At issue here, however, "is not Rule 60(b)(1) mistake by a party, but [alleged] mistake[s] by the court." Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 460 (8th Cir. 2000) (emphasis added). In the Eighth Circuit, "'relief under Rule 60(b)(1) for judicial error other than for judicial inadvertence' is not available." Id. (quoting Fox v. Brewer, 620 F.2d 177, 180 (8th Cir. 1980)). I find that the defendants' motion is not based on "judicial inadvertence"; therefore, I cannot characterize it as a Rule 60(b)(1) motion.

As I noted above, the defendants' motion is not based on newly discovered evidence, and therefore it is not a Rule 60(b)(2) motion. Also, there is simply no indication that the motion is based on the grounds specified in Rules 60(b)(3)-(5).

This leaves option (6) as the only remaining alternative under Rule 60(b). "Relief is available under Rule 60(b)(6) only where exceptional circumstances have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress." Murphy v. Missouri Dept. of Corrections, 506 F.3d 1111, 1117 (8th Cir. 2007) (quoting Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005)). The defendants have not shown that such exceptional circumstances exist in this case.[4]

I shall construe the defendants' motion to reconsider as a Rule 59(e) motion. In accordance with Federal Rule of Appellate Procedure 4(a)(4)(A)-(B), the defendants' notice of appeal is not yet effective, and I have jurisdiction to consider their motion. I shall now proceed to determine whether I committed any "manifest errors of law or fact" when denying the defendants' motion for summary judgment. United States v. Metropolitan St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (quoting Innovative Home Health Care v. P.T.-O.T. Associates of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998)).

---

[4] It merits re-emphasizing that the defendants did not argue that their motion falls within any subpart of Rule 60(b), or, for that matter, within Rule 59(e).

8

### III.   ANALYSIS

As I noted previously, the defendants' Rule 59(e) motion is based on three primary arguments: 1) I "erroneously relied upon [the plaintiff's] unsupported affidavits and depositions"; 2) the "[d]efendants' actions do not shock the conscience"; and 3) "[t]he facts do not establish a conspiracy." (Defs.' Br. at 1, 6, 8, ECF No. 147.) I shall consider each of the defendants' arguments in turn.

### A.   The Plaintiff's Evidence

The defendants' argue that I erred by considering the evidence submitted by the plaintiff because the plaintiff's evidence contradicts the evidence submitted by the defendants. (Defs.' Br. at 1-6, ECF No. 147.) The defendants acknowledge that "at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party," but they argue that this rule applies "only if there is a 'genuine' dispute about those facts." (Id. at 2 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)) (emphasis omitted).) According to the defendants, White cannot genuinely dispute the facts contained within the documents submitted by the defendants because: 1) "all of the records utilized or created in the investigation" are before the court, and "there is nothing [in these records] to support a case of manufactured evidence"; and 2) the evidence submitted by the plaintiff was created "over twenty years after the conclusion of the investigation" and contains a "completely contradictory version[] of the events that occurred in 1989." (Id. at 3, 5.) The defendants add that I should have "consider[ed] how the timing of the [p]laintiff's submissions and the likely credibility of the affiants bear on the probable reliability of [the plaintiff's] evidence." (Id. at 1-2, 6 (quoting Schlup v. Delo, 513 U.S. 298, 332 (1995)).)

The defendants' arguments are not persuasive. In the first place, it is not clear that I have before me all of the records that relate to the investigation of the Wilson homicide, as the defendants claim. (See Mem. & Order at 1-2, 4-6, ECF No. 142 (discussing the defendants' motion to strike Beatrice Police Department reports created between 1985 and 1989).) That aside, it is simply not true that the defendants' investigation records do not "support a case of manufactured evidence." My memorandum and order denying the defendants' summary judgment motion includes a review of the evidence favoring the plaintiff, and this review is replete with citations to the defendants' own affidavits and exhibits. (Mem. & Order at 69-79, ECF No. 142.)

9

Also, the defendants reliance upon Schlup v. Delo is misplaced. Schlup does not stand for the proposition that, when considering a motion for summary judgment, "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." 513 U.S. at 332 (noting specifically that the standard discussed in Schlup is not appropriate for deciding motions for summary judgment). On the contrary, it is well-established that courts should not make credibility determinations or weigh the evidence at the summary judgment stage. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

It is true that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In Scott, a motorist fleeing from law enforcement officers brought a § 1983 claim after he was injured during the pursuit, and an officer moved for summary judgment based on qualified immunity. The district court denied the officer's motion, finding that when the motorist's version of the facts was taken to be true, there was a factual issue as to whether the motorist "was driving in such a fashion as to endanger human life." 550 U.S. at 380. See also id. at 376. The court of appeals affirmed this decision, but the Supreme Court reversed. In so doing, the Court noted that "courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion,'" which, "[i]n qualified immunity cases, . . . usually means adopting . . . the plaintiff's version of the facts." Id. at 378 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)) (alteration brackets omitted). In Scott, however, the record included "a videotape capturing the events in question," and this "videotape quite clearly contradict[ed] the version of the story told by [the motorist] and adopted by the Court of Appeals." Id. The Court explained that the officer was entitled to qualified immunity based on the videotape, stating, "[The motorist's] version of events is so utterly discredited by the record that no reasonable

jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." Id. at 380-81.

The Eighth Circuit applied Scott's principal holding in Reed v. City of St. Charles, Missouri, 561 F.3d 788 (8th Cir. 2009). In Reed, an arrestee (Reed) brought a § 1983 claim alleging that his arresting officers used excessive force. Reed's version of the facts was supported solely by his own self-serving deposition testimony, but it was contradicted by "a medical assessment conducted by an emergency-room physician shortly after Reed's arrest, the deposition testimony of the Officers, . . . a contemporaneous incident report prepared by" two of the arresting officers, and by Reed's guilty plea "to the felony charge of resisting arrest." 561 F.3d at 791 (citation omitted). The court of appeals found that the district court correctly granted summary judgment in favor of the officers, stating,

> Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to "accept unreasonable inferences or sheer speculation as fact." We agree with the District Court that given the circumstances presented in this case, no reasonable jury could have credited Reed's version of events. Because the evidence Reed offers amounts to "[m]ere allegations, unsupported by specific facts or evidence beyond [Reed]'s own conclusions, [he cannot] withstand a motion for summary judgment." The court did not err in concluding that Reed failed to carry his burden to proffer sufficient evidence to permit a finding in his favor on more than "mere speculation, conjecture, or fantasy."

Id. at 791-92 (citations omitted) (alterations in original).

Citing Scott and Reed, the defendants argue that they are entitled to summary judgment because White's "new unsupported evidence" is contradicted by the documents produced by the defendants. (Defs.' Br. at 6 (quotation marks omitted); see also id. at 4-5.) I find, however, that the instant case is readily distinguishable from both Scott and Reed. White's version of events is not so utterly discredited by the record that no reasonable jury could return a verdict in his favor. Nor is White's case based on "mere speculation, conjecture, or fantasy." Reed, 561 F.3d at 792 (quoting Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994)). Investigation records, affidavits,

11

depositions, and other exhibits–including the statements of Beatrice Police Department officers and the defendants' own documents–support the plaintiff's case and raise a genuine issue for trial.[5]

When analyzing the defendants' motion for summary judgment, I viewed the facts and drew reasonable inferences in White's favor, and I concluded that there is sufficient evidence to support a finding that the defendants violated White's due process rights. This was not error.

### B. Conscience-shocking Conduct

The defendants argue next that I erred by concluding that the defendants' actions shock the conscience. They claim that they "may have lied to the suspects, told them they were facing the death penalty, or asked leading questions in order to help them remember facts of a case over four years old," but they submit that "all of those tactics of investigation are allowed, even today." (Defs.' Br. at 7, ECF No. 147.) I take the defendants' argument to be that, because all of their investigatory techniques are (and were) allowable, their actions cannot be conscience-shocking.

In my memorandum and order on the defendants' summary judgment motion, I took care to state that my findings should not "be interpreted as a determination that the constitution prevents officers from asking leading questions, engaging in any form of deception, or informing suspects that they face (or may face) capital charges." (Mem. & Order at 80, ECF No. 142.) I made this statement in order to clarify that I was only addressing the question of whether there was evidence of a conspiracy to build a case against White using false evidence, and that I was not evaluating the constitutionality of these specific investigation techniques. (See id.) To the extent that the defendants are now claiming that the evidence shows only that the defendants asked leading questions, engaged in deception, or informed suspects that they faced capital charges, they have misread my memorandum. The record does not show that the defendants merely asked leading questions or deceived witnesses; rather, there is evidence that the defendants supplied information to the witnesses and manipulated them through the use of threats, incentives, psychological expertise,

---

[5] In arguing that the evidence supporting the plaintiff's case is insufficient, the defendants have made a number of representations that–according to the plaintiff–lack support in the record. (Compare Defs.' Br. at 5, ECF No. 147 with Pl.'s Br. at 6-10.) I see no need to work through these disputes at this time, nor shall I comment upon the relative strength of the parties' positions. For present purposes, it is sufficient to reaffirm my conclusion that there is sufficient evidence to support a verdict in the plaintiff's favor.

and coaching to affirm this information and support the defendants' false case against White. The record does not show that the defendants merely informed the witnesses against White that they faced capital charges; rather, there is evidence that the defendants threatened one of the witnesses with electrocution for failing to cooperate with their investigation. The record also includes evidence of other "conscience-shocking" actions that support the plaintiff's claim–many of which are described generally in Part I above.

In short, the plaintiff's case is not based on evidence showing merely that the defendants led witnesses, lied, and informed suspects of the seriousness of the charges against them. Insofar as the defendants argue otherwise, their argument is plainly contradicted by the record.

Citing Rochin v. California, 342 U.S. 165, 172 (1952), the defendants also argue that because there have been no allegations of "physical abuse" or deprivations "of food, water, or the basic necessities of life," and because White and his alleged accomplices "were all represented by counsel during the proceedings," White cannot show that the defendants engaged in conduct that shocks the conscience. (Defs.' Br. at 6-8, ECF No. 147.) This argument too lacks merit.

"[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (citations omitted). See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) ("The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression." (alteration brackets, quotation marks, and citations omitted)). In cases involving specific actions by government officers, "only the most egregious official conduct" is "arbitrary in the constitutional sense." Lewis, 523 U.S. at 846 (quoting Collins, 503 U.S. at 129). In Rochin v. California, the Supreme Court first used the phrase "shocks the conscience" to describe official conduct that meets the threshold for a viable due process claim. See Lewis, 523 U.S. at 846 (quoting Rochin, 342 U.S. at 172-73)). More specifically, the Court held that "the forced pumping of a suspect's stomach [was] enough to offend due process as conduct that 'shocks the conscience' and violates the 'decencies of civilized conduct.'" Id. (quoting Rochin, 342 U.S. at 172-73)).

The "physical abuse" described in Rochin is not the only sort of official conduct that capable of shocking the conscience, however. For example, in Wilson v. Lawrence County, 260 F.3d 946, 956-57 (8th Cir. 2001), the Eighth Circuit held that officers' reckless or intentional failure to investigate other leads or suspects could amount to conscience-shocking conduct. The court also stated, "If officers use false evidence, including false testimony, to secure a conviction, the defendant's due process is violated." Id. at 954-55 (citing Napue v. Illinois, 360 U.S. 264, 269 (1959); Mooney v. Holohan, 294 U.S. 103, 112 (1935)).[6] Similarly, in Moran v. Clarke, 296 F.3d 638, 647-48 (8th Cir. 2002), the Eighth Circuit found that the plaintiff had introduced evidence of conscience-shocking conduct on the part of the defendants. The court explained,

> [The plaintiff] introduced evidence that tends to show a police department that publically and financially committed itself to producing a culprit for an alleged wrongdoing before any such wrongdoing was actually established. He produced proof of questionable procedures, of pressures placed on officers to incriminate a specific person or corroborate the department's official line, of a hasty condemnation of Moran and of improper consideration of his race. Moreover, he offered proof that, at various times, certain defendants purposely ignored evidence that strongly tended to exonerate him. In short, drawing all inferences in his favor, a reasonable jury could conclude that some or all of the defendants intentionally set up an innocent Moran for patently arbitrary reasons.

In short, it is well-established that an officer's use of false evidence to secure a conviction is capable of shocking the conscience, and thereby violating the convicted person's due process rights. After reviewing the record once again, I remain persuaded that when the evidence is viewed in a light favorable to White, and reasonable inferences are drawn in his favor, he has shown that the defendants violated his fundamental right to liberty "in the most traditional sense," Wilson, 260 F.3d at 956 n.8, and that the defendants' conduct was "so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience," Lewis, 523 U.S. at 847 n.8.

### C.  Evidence of Conspiracy

The defendants submit that "[i]n order to prove a conspiracy, [the plaintiff was] charged with providing a genuine factual issue of concerted activity by the [d]efendants toward an unlawful

---

[6] As the Supreme Court explained in Lewis, a finding of a due process violation in this context necessarily entails a finding that the official's conduct was conscience-shocking. See 523 U.S. at 846-47.

objective," (Defs.' Br. at 9, ECF No. 147), and they argue that the plaintiff has failed to meet this burden. I find, however, that when the record is viewed in a light favorable to White, there is a genuine issue as to whether the defendants acted in concert to manufacture a false case against him in violation of his due process rights.

In support of their argument, the defendants refer me to Myers v. Morris, 810 F.2d 1437 (8th Cir. 1987), abrogated on other grounds by Burns v. Reed, 500 U.S. 478 (1991). In Myers, the plaintiffs claimed that children made false claims of sexual abuse "and the prosecutor, sheriff, sheriff's deputies, guardians, therapists, a court-appointed attorney, and a police officer conspired among themselves and with others to extract fabricated accusations from children in order to target the plaintiffs for prosecution." Id. at 1452. It was alleged that the "purpose of the conspiracy was to invent a 'sex ring' as part of a publicity campaign against child abuse and incest undertaken by the conspirators in order to advance the career of the prosecutor." Id. The court of appeals held that the defendants were entitled to summary judgment because "the plaintiff's assertions of conspiratorial purpose amount to no more than unsupported allegations of malice." Id. at 1453. The court explained, "We think that more than the mere recitation of an improper state of mind such as malice, bad faith, retaliatory motive or conspiracy is required to defeat qualified immunity for conduct which, absent that state of mind, would be constitutionally acceptable or protected by immunity." Id.

The fact that the defendants' conduct consisted of "facially legitimate investigative reporting functions" that would be lawful "if not distorted by impermissible motives" was central to the court's analysis in Myers. In the instant case, however, the defendants' underlying conduct is not "facially legitimate," such that it would be "constitutionally acceptable or protected by immunity" if it were not tainted by an improper motive. In other words, unlike Myers, this is not a case where a claimant is relying solely on allegations of "conspiracy," "malice," etc. to pierce the defendants' immunity. As I have explained above, there is evidence that the defendants violated White's due process rights by manufacturing a false case against him, and the defendants are not protected by qualified immunity. Myers is inapposite.

**IT IS ORDERED** that the defendants' motion to reconsider, ECF No. 146, is denied.

**IT IS FURTHER ORDERED** that the defendants' notice of appeal, ECF No. 149, is no longer dormant, and the clerk is notified that defendants' appeal should now proceed.

Dated October 19, 2011.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge